UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
YIK MAN MUI,

                Petitioner,

      v.

                                                      99 CV 3627 (SJ) (RER)

                                                      <u>ORDER ADOPTING</u>
                                                      <u>REPORT AND</u>
                                                     <u>RECOMMENDATION</u>

UNITED STATES OF AMERICA,

                Respondent.

-------------------------------------------------X

A P P E A R A N C E S

OBEID & LOWENSTEIN
111 Broadway
Suite 1401
New York, NY 10006
By:    Fran Obeid
Attorney for Petitioner

UNITED STATES ATTORNEY
Loretta E. Lynch
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Elizabeth Kramer
Attorney for Respondent

**JOHNSON, Senior District Judge:**

        The facts and circumstances surrounding the instant petition ("Petition") filed

by Yik Man Mui ("Mui" or "Petitioner") are fully set forth in Magistrate Judge

Ramon E. Reyes' March 1, 2012 Report and Recommendation ("Report"), and are

1

incorporated herein by reference.  Because familiarity therewith is assumed, the following is a relatively brief synopsis of the procedural posture of both this case and the underlying criminal matter, styled United States v. Mui, 95 CR 766 (E.D.N.Y. Filed Aug. 10, 1995).

On July 4, 1993, Tak Leung Chung, also known as Kenny Chung ("Chung"), was found dead on Route 295 in Anne Arundel County, Maryland.  He had been beaten with a baseball bat, shot several times, and abandoned on the side of the road. Petitioner was arrested and charged with nine counts: conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951; interference with commerce by robbery, in violation of 18 U.S.C. § 1951; conspiracy to travel in interstate commerce in aid of racketeering, in violation of 18 U.S.C. § 371; travel in interstate commerce in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(2)(B); conspiracy to kidnap, in violation of 18 U.S.C. § 1959(a)(5); kidnapping, in violation of 18 U.S.C. § 1959(a)(1); conspiracy to commit murder, in violation of 18 U.S.C. § 1959(a)(5); murder, in violation of 18 U.S.C. § 1959(a)(1); and using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1).

At trial, government witnesses testified that at the time of Chung's murder, Mui was the chairman of the Baltimore Lodge of the Hung Mun Chinese Freemasons.  Chung was known to be cheating the lodge, to the point the lodge once closed early after running out of cash.  A cooperating witness, Ho Sui, testified that he, Chung, and two others had been cheating the lodge.  Another government

witness, Kenny Chen ("Chen"), testified that Mui told him that Chung and others were cheating the lodge. Chen recruited Minh Luong ("Luong") and Ah Dai to assist in kidnapping Chung and recouping Mui's losses. Luong testified that the group received their orders from Mui and traveled from New York to Maryland when Mui announced that the Baltimore Lodge was ready to receive them. Mui was aware that the kidnappers had a .9 millimeter handgun.

Chung arrived that night as expected, and was kidnapped, handcuffed, stripped of the firearm he was carrying, punched and hit with a baseball bat. Mui was among those involved in the beating and inquired of Chung the identity of those who assisted Chung in cheating. Chung agreed to take the kidnappers to New York for the purpose of pointing out his cheating partners to them.

Mui called his co-defendant, Chin Yen Kwok ("Kwok"), who instructed Chen to follow Mui's orders. The group left Baltimore with instructions to go to New York. However, en route, the driver stopped the vehicle, telling to Luong to "take care of" Chung, whereupon the driver, Luong and Ah Dai took turns shooting Chung. Cellular telephone records confirmed communication between Chen, Mui and the Baltimore Lodge.

When initially questioned by Lieutenant Kenneth Ward ("Ward") of the Maryland State Police, Mui denied knowing Chung, then admitted knowing Chung and being present at the lodge on the night of the murder, then fled the interview on foot.

On October 30, 1996, the jury returned a verdict of guilty on all counts.  Mui filed a motion for a new trial, alleging ineffective assistance of counsel on the part of trial counsel, Jonathan Marks ("Marks"), who by then Mui replaced with new counsel.  The motion was denied.  On April 10, 1997, Mui was sentenced to a term of life imprisonment plus 60 months.   A direct appeal followed, and on June 24, 2013, the Second Circuit affirmed Mui's conviction.  See United States v. Mui, 159 F.3d 1349 (2d Cir. 1998).

On May 8, 1999, Mui filed the instant petition pursuant to 28 U.S.C. § 2255 ("Section 2255"), alleging ineffective assistance of counsel on the part of both his trial and appellate counsel, and claiming that he was deprived of an adequate Cantonese interpreter at trial, constituting violations of the Fifth Amendment's Due Process Clause and the Sixth Amendment's right to counsel.  Some of the ineffective assistance claims raised by Mui were already rejected on direct appeal and were thus deemed without merit in a February 9, 2005 order of this Court.  In the same order, this Court determined that the remainder of Mui's claims were procedurally defaulted because they had not been raised on direct appeal.  A September 19, 2007 order of this Court denied Mui's motion for reconsideration.

Mui appealed both, and on July 30, 2010, the Second Circuit Court of Appeals remanded the action for consideration of certain ineffective assistance claims.  Specifically, the Second Circuit held that pursuant to Massaro v. United States, 538 U.S. 500 (2003), ineffective assistance of counsel claims can be

presented for the first time either at the direct appeal level or in a Section 2255 petition, and that a Section 2255 petition raising ineffective assistance of counsel claims can follow a direct appeal raising different ineffective assistance of counsel claims.  See Mui v. United States, 614 F.3d 50 (2d Cir. 2010).

Therefore, presently before the Court are seven claims brought in Mui's Section 2255 petition that were not among those ineffective assistance of counsel claims brought on direct appeal.  Each of the claims involves trial counsel.  Mui claims that Marks provided ineffective assistance because: (1) Marks failed to secure a Cantonese interpreter at each of his meetings with Mui; (2) Marks failed to raise with the District Court Mui's alleged difficulty understanding proceedings; (3) Marks did not examine certain evidence; (4) Marks made false assertions in his opening statement; (5) Marks failed to investigate any defense witnesses; (6) Marks failed to raise jurisdictional challenges; and (7) Marks failed to file motions related to exculpatory evidence.

I referred the Petition to Judge Reyes, whereupon the following communications brought to light an eighth claim: Judge Reyes ordered Marks to submit an affidavit addressing the issues on remand, which Marks did on May 20, 2011 (the "Marks Affidavit" or the "Affidavit").  Among other things, Marks wrote: "This is a very troubling case.  Mr. Mui was offered a plea that would have exposed him to no more than five years in prison.  I urged him to accept the offer, but he rejected my advice and went to trial.  He was sentenced to life, which is an

5

exceedingly harsh sentence for his tangential involvement in Kenny Chung's murder."

On June 20, 2011, Mui submitted a response to the Marks Affidavit.  Mui indicated that until he read the Marks Affidavit, he was unaware of a five year plea offer.  Mui moved to supplement his Petition with a claim that Marks was ineffective for failing to advise him of the existence of this deal, alleging that had he been aware of it, he would have accepted it rather than risk the chance of a life sentence after trial.

Judge Reyes determined that a hearing was necessary and appointed counsel for Mui.  Prior to the hearing, Marks submitted a letter (the "Letter") to the court purporting to correct statements in his Affidavit.  In the Letter, Marks stated that "[o]n further reflection," the government had not offered Mui a five year deal. Marks explained that his prior statement was influenced by a recent conversation Marks had with Lawrence Frost ("Frost"), an investigator who worked for Marks on Mui's case.  Marks claimed to have "conflated what Larry Frost told [him] . . . with [his] own independent recollection."  In the end, all Marks was certain of was that he generally encouraged Mui to plead rather than go to trial and that those efforts were rebuffed by Mui.

Judge Reyes held a hearing on September 26, 2011, which was continued to October 31, 2011.  At the hearing, he took testimony of five witnesses: Mui, Marks, Frost, Harold Pokel ("Pokel"), the attorney who represented co-defendant Kwok at

6

trial, and former Assistant United States Attorney John Curran ("Curran"), who tried the case against Mui and Kwok.

On March 1, 2012, Judge Reyes issued the Report in which he recommended denying the Petition in full.  Judge Reyes determined that Mui failed to establish the existence of a five year plea deal, a language barrier between him and Marks or between him and the court interpreter, or any unreasonable conduct by Marks.   On May 30, 2012, Mui, through counsel, filed objections to certain conclusions of law made in the Report.  Mui's arguments focus on three issues: (1) whether Mui could communicate with Marks and understand court proceedings; (2) whether Marks properly prepared for trial; and (3) whether a five year plea deal existed.[1]

I.     Access to Cantonese Interpreter

Mui alleges that he received ineffective assistance of counsel because Marks conducted meetings with him without the aid of a Cantonese interpreter and because Marks did not raise with the Court Mui's alleged difficulty understanding the Cantonese interpreter who was present at trial.

A.  Availability of Interpreters at Pre-Trial Meetings

---

[1] Mui's objections do not purport to challenge the remaining recommendations.  Therefore, Mui has waived any right to review of Judge Reyes' findings that Marks did not make false statements in his opening statement, was not constitutionally ineffective for conceding that Mui ran a gambling operation that Chung cheated, and was not constitutionally ineffective for failing to contest venue.  Thomas v. Arn, 474 U.S.140, 147-8 (1985); Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002).  Those findings are adopted.

None of the witnesses were able to provide a specific number of pre-trial meetings between Marks and Mui.  However, Mui testified that he met with Marks five or six times in the year prior to trial, which is a figure consistent with the Marks Affidavit.   At the time of the meetings, Marks employed a native Cantonese-speaking paralegal, Philene Kwan ("Kwan"), who Marks claims was present at most meetings and interpreted for Mui.   Additionally, both Marks and Frost testified that the woman who referred Mui to Marks, Amy Chan ("Chan"), also spoke Cantonese, and attended "several" meetings with Frost, Marks and Mui.  Marks also testified that he could recall only one meeting with Mui at which an interpreter was not present.  On the other hand, Mui testified that only twice did Marks provide an interpreter.

The parties dispute not only the number of meetings at which an interpreter was present but Mui's facility with the English language.  Mui claims that at the time of the events alleged in the Petition he knew "merely the basics of English, i.e., hello, goodbye, etc.," having come to the United States from Hong Kong in 1975 at the age of 15.   Mui briefly attended high school in New York, and claims that English language limitations led to him having trouble there.  Mui dropped out of high school at 17, moved to Baltimore and joined the Hung Mun.  His only work had been in Chinese restaurants.   Marks admits that Mui "had a sub-standard mastery" of English.  However, Marks testified that Mui was not so impaired as to make communication difficult without an interpreter.  Specifically, Marks testified that it is

his belief that he and Mui were able to communicate without difficulties.  Marks recalled speaking to Mui in English without aid of Kwan, even in Kwan's presence. In addition to not recalling any problems communicating with Mui, Marks recalled cross-examining Lieutenant Ward about Ward's conversation with Mui in which Mui allegedly lied about knowing Chung.  Marks stated "Had I been unable to speak with Mr. Mui in English, I would have cross-examined Lt. Ward on this point."

### B.  Court Interpreters

Mui also complains that he did not understand the Cantonese interpreter at trial, who Mui claims spoke with what was to him an unintelligible Mandarin accent. However, no objection was made a trial.  Mui claims that Marks is to blame for failing to raise the issue, while Marks does not recall Mui apprising him of any problem with the court interpreter, and stated that his normal practice if a client does not understand the court proceedings would be to make a record of the issue.[2]

### II.    Pre-Trial Preparation

Mui argues that Marks failed to adequately prepare for trial in a variety of ways.  Mui claims that Marks did not examine certain evidence and investigate certain witnesses, and that Marks failed to file motions to preserve or disclose exculpatory evidence.  Specifically, Mui claims that "a Malt 45 can that was directly

---

[2] Mui's co-defendant, on the other hand, did object at trial to the quality of the translations provided by the Court interpreter.  Specifically, Kwok complained that the interpreter was only translating a portion of the testimony.  Mui did not join in on this objection.

beneath the victim along with two containers of fresh oriental food" constituted "critical evidence" about which Marks failed to cross-examine a government's witness.  Mui also argues that Marks' failure to seek disclosure of certain "rough notes" taken by the government's investigator witnesses constituted ineffective assistance of counsel because "[h]ad counsel had the rough notes . . . he would or should have known beyond a reasonable degree of certainty that no investigation was thorough by the investigating agents."

In response, Marks stated in his affidavit that he could not independently recall examining the physical evidence but located a letter he sent to Mui on December 14, 1998 indicating that all of the physical evidence was reviewed.  Marks also stated that while he could not recall Mui telling him about potential character witnesses, it is unlikely those witnesses would have been called to the stand because their testimony would open the door to a cross examination in which the government could summarize the evidence against Mui.  Marks did not dispute his failure to seek out the government investigators' "rough notes."

III.     Availability of a Five-Year Plea Deal

Mui claims that Judge Reyes erred in concluding that there was no five year plea offer.  In support, Mui relies on the language barrier he claims existed between him and Marks.  Mui also points to the retracted statement in the Marks Affidavit and to both the testimony of Marks and Frost, who recalled trying to persuade Mui to

plead.   According to Mui, if Marks and Frost recall discussing a plea with him, "there must have been a plea . . . to plead to," and "[a]ny plea would have been less than the life sentence [Mui] is serving."

<u>DISCUSSION</u>

In <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), the Supreme Court established a two-part test to determine whether counsel's assistance was ineffective. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."   <u>Strickland</u>, 466 U.S. at 688.   When evaluating counsel's performance, courts give deference to the attorney, since it is all too tempting for a defendant to second-guess counsel's assistance after conviction. To fairly assess an attorney's performance, courts eliminate the effect of hindsight by reconstructing the circumstances of counsel's conduct from counsel's perspective. Thus, to meet the first prong of the Strickland test, Petitioner must overcome the strong presumption that the challenged action was sound trial strategy under the circumstances at the time.  <u>See</u> <u>id.</u> at 689.

Second, the defendant must show that counsel's performance prejudiced his defense.  <u>See</u> <u>id.</u> at 692.  To show prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>See</u> <u>id.</u> at 694.  Thus, the petitioner must demonstrate that counsel failed to raise significant and obvious issues that if raised, would likely have been

11

successful.  See Mayo v. Henderson, 13 F.3d 528, 533–34 (2d Cir. 1994).  Because a convicted defendant will always have a strong incentive to make a prejudice claim after conviction, courts are skeptical of "self-serving, post-conviction testimony" that but for counsel's bad advice, the defendant would have pled guilty or gone to trial. See Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003) (in addressing prejudice showing required on ineffective assistance claim, court noted that "a convicted felon's self-serving testimony is not likely to be credible").  A defendant must meet both prongs to prove that the conviction resulted from a breakdown in the adversary process.  See Keiser v. New York, 56 F.3d 16, 18 (2d Cir. 1995).

I.   Language Barrier

Several of Petitioner's complaints are premised upon the alleged language barrier between him and the Court and between him and his defense team.  He claims Marks provided ineffective assistance of counsel because Marks conducted meetings with him without an interpreter, Marks failed to bring to light Mui's problems understanding the court's trial interpreter, and Marks failed to communicate a plea offer to him.  However, for the following reasons, Mui has not established by a preponderance of the evidence that any such barrier existed.

Neither Mui's testimony nor the statements he has made in support of the Petition are credible.  He denied making statements attributed to him in his Pre-Sentence Investigation Report ("PSR"), claiming he never told the Probation

Department that he had 10 years of formal education in Hong Kong or that he learned English on the streets of Hong Kong, while the PSR attributes those statements to him.  Mui also claimed to have difficulty understanding the Court's interpreter at trial, because she allegedly spoke Cantonese with a Mandarin accent.  However, no such objection was made at trial, nor did Mui avail himself of the opportunity to join in on an objection made by Kwok that the court's interpreter was translating only portions of the proceedings.  Furthermore, on January 13, 1997, Mui submitted an affidavit in support of his motion for a new trial in which he stated, inter alia, that "[d]uring the direct examination of Kenny Chen, I realized that Chen's testimony . . . did not make sense."  Mui's affidavit went on to summarize both Marks' cross-examination of Chen (including what Marks did and did not elicit on cross-examination) and Marks' summation.  To make these statements, Mui would have had to comprehend the proceedings.

Mui then testified that there was no interpreter present for his sentencing, a statement that is simply untrue.  After the hearing before Judge Reyes, Mui submitted a letter claiming that he was not perjuring himself when he said there was no interpreter at sentencing, but rather was confused.  Specifically, counsel for Mui, at Mui's request, wrote:  "When questioned, he believed he was being asked whether Mr. Goldberger, [his counsel at sentencing] brought an interpreter to sentencing, as opposed to the Court providing an interpreter."  As the following exchange (taken

from the October 31, 2011 hearing before Judge Reyes) demonstrates, even that is not true:

> AUSA: Mr. Goldberger said at sentencing that the only statement . . . [he] wish[es] to make is that "Mr. Mui continues to assert that he is innocent of the charges, that he is not guilty of any of the crimes for which he has been convicted and he has the intent to pursue his remedy?"
>
> Mui: I don't know what he said to the judge at the time. There was no interpreter present.
>
> AUSA: There was no interpreter at your sentencing?
>
> Mui: No.

Mui's response does not indicate that he believed he was being asked about the source of the interpreter.

Mui also testified that Marks never discussed the government's evidence with him. However, in his 1997 affidavit, he describes a meeting with Marks that took place at the Metropolitan Detention Center ("MDC") on the weekend following the end of the government's case. Mui wrote:

> Again I tried to explain the importance of the cellular phone records and urged him to use them as part of our defense. I also restated my intent to testify.
>
> Mr. Marks, however, seemed distracted. He kept insisting that I should not testify because the case looked very bad. He said my testimony would insure [*sic*] a conviction since I would have to admit several of the crimes charged, which was not true. In any event, Mr. Marks had already told the jury that I was, in effect, guilty of several of the crimes charged in his opening statement. He also said the prosecutor would vigorously cross-examine me about a variety of matters including a 1992 credit card fraud charge against me, which I later learned would not necessarily be allowed. I was totally confused when Mr. Marks left our meeting.

While Mui claims to have been confused, he makes nary a mention of communication difficulties between him and Marks.   What he does is complain that Marks was wrong about the scope of the government's would-be cross-examination, Marks ought to have permitted him to testify, and Marks ought to have cross-examined Chen differently – issues that he and Marks discussed and on which they disagreed.[3]  It is especially noteworthy that Marks made this trip to MDC without an interpreter.

These inconsistencies undercut Mui's claim that without an interpreter he was unable to communicate with Marks and it also indicates that, contrary to Mui's testimony, he did discuss the government's evidence with Marks.   See, e.g., Castillo v. United States, No. 07 CV 2976 (KMW), 2010 WL 3912788, at *3 (S.D.N.Y. Sept. 8, 2010) (dismissing petition where record demonstrated that petitioner "possess[ed] an understanding of English sufficient to comprehend the proceedings"); Elize v. United States, No. 12 CV 1350 (NGG), 2008 WL 4425286, at *7 (E.D.N.Y.  Sept. 30, 2008) ("When a defendant is clearly able to communicate in a given language, he cannot sustain claims protesting that his trial was unfair because of a language barrier.").

Mui also claims that a five year plea deal existed and that Marks failed to properly communicate it to him.  However, Mui's only evidence is the statement in

---

[3] Incidentally, on appeal, Mui based his ineffective assistance of counsel arguments on these disagreements with Marks.  The Second Circuit rejected Mui's claims.  United States v. Mui, 159 F.3d 1349 (2d Cir. 1998).

the Marks Affidavit that Marks has since recanted.  At the hearing, Marks testified that at the time he wrote the affidavit, he was focused on accurately answering the Court's questions about the claims made in the Petition, which itself he considered to be difficult given the age of the case.  Marks testified that he spoke with Frost prior to preparing the Affidavit and that Frost recalled a five year deal.  Marks claims he did not realize that he had no independent recollection of the five year deal until after Mui raised it as a basis for finding Marks ineffective as counsel.  Upon a subsequent discussion with Frost, Marks claims that he realized his mistake.  Yes, it is true, Marks claims, he tried to convince Mui to accept a plea, but there was not actually a plea offer pending.  Instead, Marks claims that he sought to gauge Mui's amenability to a plea as a general matter, and Mui remained adamantly opposed to pleading no matter the would-be offer suggested by Marks.

While Marks' version of events is not without drawbacks, there is greater support in the record for his recollection of events than Mui's.  Frost testified that he recalled being upset about Mui's insistence on going to trial.  He also remembered Marks being upset for the same reason.  Frost recalled Marks unsuccessfully trying to convince Mui that a plea of "a single digit number below ten years," but Frost was not privy to any communications with the government and could not say whether any plea existed at all.

Pokel also recalled Marks being dismayed at his failure to convince Mui to consider a plea.  While Pokel "seem[ed] to remember five years," he was not certain

and in any event was "completely clear that [Marks] would have conveyed it to his client" because Marks "was certainly that kind of lawyer."  Finally, Pokel recalled "strongly" feeling that AUSA Curran wanted to try the case, and not have the defendants plead to fewer charges.

AUSA Curran testified that because the alleged plea discussions would have been close in time to the trial, the only deal he would have been empowered to offer Mui would have been to the top count in the indictment, i.e., murder, which would have led to a sentence far in excess of five years.  Curran also testified that anything more favorable than a plea to the top count would have had to be approved by a supervisor, and he had no recollection of seeking that approval.

Therefore, Mui has not established that there was either a five year plea deal, or any plea deal that Marks failed to offer him.  At best, he argues that Marks failed to bring an interpreter to the meetings at which the topic was raised.  However, Mui's lack of credibility as to the existence of a language barrier also weighs against a claim that he didn't understand Marks in the discussions they had about pleading.

Judge Reyes' finding that Mui's claims are not credible is hereby adopted. This finding renders untenable Mui's allegation that he failed to comprehend the proceedings, as well as his claim that he could not comprehend his lawyer. Therefore, Mui's claim that Marks was ineffective for failing to question the quality of the Court interpreter, failing to provide a Cantonese interpreter at each of their meetings, and failing to discuss a guilty plea with him are without merit.

17

II.     Examination of Evidence

Mui claims that Marks failed to examine the "Malt 45" and "fresh oriental food" found near Chung, but fails to offer any support for his claim that these were "critical" pieces of evidence.  Mui also claims that Marks should have investigated the circumstances surrounding the photographs of Mui introduced at trial, which were offered to show Mui's association with New York members of the Hung Mun.  However, Marks reported to Mui on December 14, 1998 that he viewed all of the physical evidence prior to trial, and Marks testified that he also reviewed the documentary discovery and 3500 materials prior to trial.

There is not a "particular set of detailed rules for counsel's conduct. . . .  Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Strickland, 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690–91.  This Court adopts Judge Reyes' credibility finding as to Marks' testimony and finds that Mui has failed to prove that Marks failed to examine the evidence.  Just because Marks did not pursue a strategy Mui now believes might have been successful does not mean that Marks was ineffective or that his decisions were anything other than tactical.  Therefore, the Report's conclusion that Marks did not fail to examine evidence is adopted.

III.     Failure to Call Witnesses

Similarly, Mui's claim that Marks was constitutionally ineffective for failing to call certain defense witnesses is bare, conclusory, and insufficient as a matter of law.

In order to prevail on a claim of ineffective assistance of counsel based on a lawyer's failure to call certain witnesses, "the petitioner must establish what these . . . witnesses would have testified to, and, equally as important, that they would in fact have testified."  Carneglia v. United States,  No. 03 CV 6388 (ADS) (ARL) 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006) (citing McCarthy v. United States, No. 02 CV 9082 (LAK), 2004 WL 136371 (S.D.N.Y. Jan. 23, 2004); Venkataram v. United States, No. 11 CV 6503 (RPP), 2013 WL 5298461, at *8 (S.D.N.Y. Sept. 20, 2013) (dismissing ineffective assistance of counsel claim where "there has been no evidence, beyond [petitioner's] speculation, that [an uncalled witness'] testimony would have impacted [petitioner's] sentence or been helpful to [petitioner] in any way").  Mui has neither shown that the would-be witnesses would have actually testified nor provided any evidence as to what the testimony would have been.

Without that much, Marks' decision not to call these witnesses is afforded tremendous deference.  See, e.g., United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional

representation.").  Marks stated that whether or not Mui told him about potential character witnesses, Marks would not likely have called them to testify because it would have provided the government with an opportunity to summarize the evidence against him.  See, e.g., United States v. Walker, 24 Fed. Appx. 57, 60 (2d Cir. 2001) ("[T]rial counsel's strategic decision to try to maintain credibility with the jury could hardly be considered ineffective assistance of counsel.") (citations omitted); see also United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant and if so, which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial" and "cannot form the basis of a meritorious ineffective assistance claim."); United States ex rel Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir. 1974) ("[T]he decision to call or bypass particular witnesses is peculiarly a question of trial strategy . . . which courts will practically never second-guess.") (citation omitted).

Therefore, this claim is without merit.


IV.   Pre-Trial Motions

Likewise, Mui cannot maintain an ineffective assistance of counsel claim based on Marks' failure to request copies of the investigator's "rough notes" because Mui has not demonstrated that the motion would have been granted and that any evidence gleaned from such notes would have altered the outcome of his trial.  See United States v. Martinez, 101 F.3d 684 (2d Cir. 1996) ("In order for [petitioner] to

be successful . . . he must show that the . . . motion would have been meritorious if filed."); see also Paez v. United States, 2012 WL 1574826, at * 2 (S.D.N.Y. May 3, 2012) (denying ineffective assistance of counsel claim where petitioner failed to suggest "any plausible argument that a motion to suppress evidence would have affected the outcome at trial").  Therefore, the Court adopts Judge Reyes' finding that Mui did not suffer ineffective assistance of counsel for Marks' failure to request those notes.


CONCLUSION

    After careful review of the record, including Mui's habeas submissions (both pro se and through counsel), the Marks Affidavit and Letter, the government's submissions, the trial transcripts, Mui's motion for a new trial (and supporting documentation), the sentencing transcripts and transcripts of the hearing before Judge Reyes, the Court finds that Judge Reyes carefully determined that Marks' representation was neither constitutionally deficient nor did it prejudice Mui. Therefore, the findings in Report are adopted in their entirety.  Because Mui has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253.  Additionally, the Court certifies that any appeal from this Order would not be taken in good faith, as Mui's claims lack any arguable basis in law or fact, and therefore in forma pauperis is also denied. See 28 U.S.C. § 1915(a)(3); Martin v. Dist. of Columbia Court of Appeals, 506 U.S.

1, 3 (1992) ("Every paper filed with the Clerk of this Court, no matter how repetitive or frivolous, requires some portion of the institution's limited resources.  A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interest of justice.").

The Clerk of the Court is directed to close the case.

SO ORDERED.

DATED: December 5, 2013                    _____/s_____
           Brooklyn, New York                    Sterling Johnson, Jr, U.S.D.J.